**FILED**
SEP - 2 2009
Clerk, U.S. District and
Bankruptcy Courts

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JESSICA RUBIO
1705 West Virginia Ave. N. W.
Washington, D.C. 20002

    Plaintiffs

v.

DISTRICT OF COLUMBIA
Serve: Darlene Fields
Office of the Attorney General
441 4th Street. N.W. 6th Floor South
Washington, D.C. 20001

Serve: Diane Thaxton, Secretary
for the District of Columbia
1340 Pa. Ave. N.W.
Washington, D.C. 20001

    Defendant

Case: 1:09-cv-01674
Assigned To : Sullivan, Emmet G.
Assign. Date : 9/2/2009
Description: Civil Rights-Non-Employ.

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

Comes now the Plaintiff, Jessica Rubio, (Rubio), by and through undersigned counsel, and sues the Defendant stating:

### JURISDICTION

1. This court has jurisdiction pursuant to 28 U.S.C.§§ 1346 (a)(2), 2401, 2671, 42 U.S.C. § 1983, the Fifth, and Eighth Amendments of the United States Constitution.

### PARTIES

2. Rubio was, at all times, relevant to this cause of action, a resident of the District of Columbia.

3. The Defendant, District of Columbia, is a sovereign government operating as the District of Columbia Government, (District). It was operating in that capacity at all times relevant to this cause of action. District's Department of Corrections employs individuals, as correctional officers, to enforce the laws of the District of Columbia, the United States

1

of America and assists in the operation of the District's jail and its Correctional Treatment Facility (CTF). The District's Jail and CTF staff are employees of District; and all acts alleged herein, were been done by them within the scope of their employment as District's agents, servants, and or employees while enforcing the District's laws and the laws of the United States; said acts alleged herein, were done while acting under the color and pretense of the District's laws, rule(s), regulation(s) statute(s), ordinance(s), practice(s) and/or customs, governing District's Jail and CTF staff. It is the enforcement of District's laws, rule(s), regulation(s) statute(s), ordinance(s), practice(s) and/or customs that caused the harm alleged in this complaint.

## FACTS

5. Rubio was arrested, and sentenced for sexual solicitation, in 2008. She was serving her sentence in the District's CTF; when the acts alleged herein took place.

6. CTF has programs designed to treat those conditions that may have resulted in an inmate's incarceration. CTF's programs are led by their staff member (s) that they certify is/are professionally qualified to listen to, treat, and make recommendations on how an inmate may resolve their problems. The ultimate purpose(s) of the program (s) is/are to assist the inmate return to the community as a productive and law abiding citizen; to reduce and/or prevent recidivism by demonstrating, to inmates, the error of their ways, and suggesting means of how they can resolve the problems that may have resulted in their incarceration.

7. While incarcerated, Rubio decided that she did not want to spend the rest of life going in and out of prisons. She made a conscience decision to turn her life around, deal with her problems, and become a law abiding and productive member of society. She was stressed and concerned about not having any money, or any family in the area to help

her, when released on September 20, 2009, nevertheless, she decided to resolve that upon her release, without breaking the law.

8. Rubio's first step, in her efforts to turn her life around, began when she requested a one-on-one session with CTF's Sgt. Powell. He was the group leader for a special group session called," Life Without A Crutch." She participated in CTF's Life Line group sessions for approximately three (3) to four (4) weeks before deciding to request a one-on-one session with Sgt. Powell. She requested it because as the leader of that special session, she felt he was be qualified to assist her deal with her problems and counsel her on how to become a law abiding and productive member of society. She preferred the one-on-one session because she did not want everyone to know her personal problem: that she was a prostitute, and that she had a drug problem. She knew she had to disclose these problems to Sgt. Powell, in order for him to assist her become a law abiding and productive member of society.

9. After Sgt. Powell's group session, he would ask if anyone wanted a one-on-one session. If an inmate wanted one, they would remain, after his group session, and sign up for a one-on-one session. Rubio signed up for a one-on-one session. The session took place immediately after the group session. During that one-on-one session, Rubio told Sgt. Powell that she's a prostitute, with a drug problem and she wanted to turn her life around. He asked her why she was a prostitute because she's young, pretty, single, and she does not have any children. She responded, for the love of money. She said where else could she make between $1200 to $1800 a day. This statement made it clear that Rubio's problem was a desire to make quick money, using her body, instead of seeking lawful employment and climbing the employment ladder toward a larger income. He did

not help Rubio deal with her desire for quick money but he took advantage of the fact that she's is a prostitute, with a drug problem, without any money, to satisfy his desire to have sex with her.

10. About a week later, Rubio had a group session with Sgt. Powell. After that session, she signed up for a one-on-one session so she could let him know that her "Sugar Daddy" had received $50.00 from him. When the one-on-one session began, she had a receipt in her hand. Sgt. Powell said I see you received it. She said yeah. Rubio was nervous and scared. She did not think that Sgt. Powell would use her to satisfy his sexual urges because she went to him to help her turn her life around not to facilitate the life she had on the street. She knew having sex with him was wrong. She was extremely anxious and suffered emotional distress about the whole matter but Sgt. Powell had paid her "Sugar Daddy" and she was obligated to have sex with him.

11. In order to have sex with Rubio, Sgt. Powell had her removed from her cell and brought to him in room (E2B), during quiet time. He knows that room does not have any windows and that during quiet time, (2pm-3:15pm) the inmates are supposed to be in their cells and quiet. He left E2B to make sure that no one was around. He returned and told Rubio to follow him to the satellite kitchen. When they arrived there, he told her to look out the window. While she was looking out the window, he put on a condom, entered her from behind, and had sex with her. Afterwards, Rubio felt cheap, used, and abused. It reminded her of the life she had on the street, that she wanted to put behind her but it had apparently followed her to CTF.

12. After the first sexual encounter, Rubio tried to put the incident behind her and focus on trying to solve her problems. She continued to participate in Sgt. Powell's group sessions

but during those sessions, he called on her numerous times causing Rubio's fellow inmates to ask if she was his "pet". She said no.

13. Rubio requested a one-on-one session, with Sgt. Powell. She said it was a good session and that she cried a lot. A week later, he called for Rubio during quiet time. She had received two receipts from her "Sugar Daddy" that Sgt. Powell had sent him. He took Rubio to the satellite kitchen again and had sex with her there. He had sex with her there two more times for a total of four (4) times.

14. On June 24, 2008, Rubio told Ms. Reeves, a CTF staffer, that Officer Terry put her in lock down because she had sex with Sgt. Powell, the man that she wanted. Shocked, Ms. Reeves questioned Rubio about the allegation. Rubio told her everything that had happened between her and Sgt. Powell. Ms. Reeves apparently told someone in CTF because CTF conducted an investigation into Rubio's allegations. Sgt. Powell, along with several other CTF Officers, were either terminated, or put on administrative leave, while Rubio's allegations, about Sgt. Powell, and allegations of his sexual misconduct with other CTF's female inmates, was being investigated. Sgt. Powell was a sexual predator, in the midst of a women prison. CTF knew, or through the exercise of ordinary care should have known, that Sgt. Powell was abusing his position and taking advantage of CTF's female inmates to satisfy his appetite to have sex with them. CTF's investigation revealed that Sgt. Powell was having sex with other female inmates but CTF should have known about his sexual abuses years before they did.

15. Rubio was released in August of 2008; but subsequently rearrested, sentenced, and returned to CTF in June of 2009. In June of 2009, she was questioned by Detective's Ashman and Schumaker about what happened between her and Sgt. Powell. She told them what happened; and agreed to testify before the grand jury. After telling them, she later learned that Lts. Rich, Harris, McNeil and Sgt. Powell were escorted off CTF property. They were either fired or put on some form of leave pending a further investigation.

5

16. After Rubio told Detective's Ashman and Schumaker what happened, between her and Sgt. Powell, certain services and programs, she enjoyed before her disclosures, were denied to her. She was denied the privilege to make phone calls; and a hygiene package. A hygiene package is given to inmates that don't have any money to buy personal hygiene items. When an inmate requests a hygiene package, it is given within week of their request. Rubio requested a hygiene package but she never received one. She was also systematically removed from her cell, by different CTF officers, solely for the purpose of them identifying her to other CTF's Officers as a "hot inmate."

17. CTF staff members were stricter, with Rubio, than with other inmates. For example, one time, Rubio was standing in the line for church services when CTF staffer Reeves approached Rubio and told her to stop talking, in the line. Rubio apologized but did so only because she was afraid of what other things might be done to her because she told on Sgt. Powell; and not because she was talking in line. CTF's officers' made Rubio's incarceration environmentally more hostile, more stressful, it was atypical and a significant hardship, on Rubio, in relation to the ordinary incidents of prison life for other inmates similarly situated, as a means of retaliating against her for disclosing the illicit sexual actions of Sgt. Powell, with her.

18. Detective Shumacker met with Rubio and told her that she was going to be transferred. She was transferred to the Rappahannock Regional Jail, in Stafford, Virginia, in either late June or early July of 2009, without a hearing on the transfer, or its impact on her. The transfer was unrelated to any disciplinary problems related to Rubio's stay at CTF but was done in retaliation for the disclosing the illicit sexual actions of Sgt. Powell, with her.

19. On a good day, without traffic, it is an hour drive from CTF, to Rappahannock Regional Jail; with traffic it is two (2) hours or more. The legal visits there are restricted from 8am-8pm, Monday through Saturday, and then only on certain hours during those time, and legal visits are prohibited on Sundays. At CTF, Rubio's attorney can visit her at

anytime, without time limitations on the legal visit. Rubio, at the Rappahannock Regional Jail, is on lock down, ie., she's confined to her cell six (6) hours a day and cannot go outside. While at CTF, she was entitled to go outside one (1) hour a day, Monday through Friday, she could go to the recreation room, and she could watch television. These privileges are more limited at Rappahannock Regional Jail than at the CTF.

20. Rubio's transfer, to the Rappahannock Regional Jail, was done in violation of her substantive due process rights and Rubio's procedural due process rights, to a hearing prior to said transfer, and the transfer was not related to any discipline violations that Rubio had committed at CTF but in retaliation against her for disclosing the illicit sexual actions of Sgt. Powell, with her.

## COUNT I
## VIOLATION OF RUBIO'S CONSTITUTION RIGHTS

21. Rubio incorporates, by reference, the allegations, in paragraphs 1 through 20 into this count, as fully as if pleaded herein.

22. Title 42 U.S.C. § 1983 provides:

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia."

While it is true that Rubio surrenders some of the rights she enjoyed prior to incarceration, she nevertheless retains her rights under the Eight Amendment's prohibition against Cruel and unusual punishment.

23. The Eighth Amendment to the United States Constitution reads:

"Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

The Eighth Amendment's Cruel and Unusual Clause guarantees Rubio the constitutional right to be secure in her bodily integrity, free from sexual harassments, sexual abuse and misuse, by CTF staff, and it guarantees her right to a reasonable safe environment free from the sexual solicitations and sexual abuses of CTF's staffers. Rubio's rights, under the Eighth Amendment's Cruel and Unusual Clause were violated when CTF's Sgt. Powell abused his position of trust, with CTF, concerning sexual involvement with inmates, when he solicited sex with Rubio and had sex with her four times, in CTF's satellite kitchen. Sgt. Powell acts were done while acting within the scope of his employment as District's agent, servant, and/or employee and done while acting under the color and pretense of the District and its rule(s), regulation(s) statute(s), ordinance(s), practice(s) and/or customs, governing CTF and done while executing, carrying out, and enforcing District's laws and CTF's rule(s) and regulation(s) requiring that he provide counseling, and assistance to CTF's inmates seeking help to return to the community as a law abiding and production citizen.

24. Sgt. Powell was employed by CTF. He was given certain responsibilities and act(s) to perform, within the scope of his employment as District's agent, servant, and/or employee; and while acting under the color and pretense of the District and its rule(s), regulation(s) statute(s), ordinance(s), practice(s) and/or customs, governing CTF staffers while executing, carrying out, and enforcing District's laws and CTF's rule(s) and regulation(s). When he violated that trust, and abused his authority, with Rubio, his actions nonetheless constitutes a violation of Rubio's constitutional rights under the Eighth

Amendment's prohibition against Cruel and Unusual Punishment; and a violation of Rubio's rights under Title 42 U.S.C. § 1983.

25. As a further direct result of the actions of: Sgt. Powell, done while enforcing the District's rule(s), regulation(s) statute(s), ordinance(s), practice(s) and/or customs, governing District's police officers, and; done while enforcing, executing, and carrying out the laws of the District of Columbia and the United States; Rubio suffered emotional distress, was denied the opportunity to have counseling on how to return to the community as a law abiding and productive citizen and was transferred to a more restrictive penal institution, than CTF, in violation of her substantive and procedure due process rights and in retaliation against her for disclosing the illicit sexual actions of Sgt. Powell, with her.

**Wherefore, the premises considered,** Rubio demands $10 million dollars in compensatory damages and $10 million dollar, in punitive damages, against the Defendant.

## COUNT II
## VIOLATION OF RUBIO'S CONSTITUTION RIGHTS

26. Rubio incorporates, by reference, the allegations, in paragraphs 1 through 25 into this count, as fully as if pleaded herein.

27. Title 42 U.S.C. § 1983 provides:

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia."

While it is true that Rubio surrenders some of the rights she enjoyed prior to incarceration, she nevertheless retains her substantive and due process rights.

28. The Fifth Amendment to the United States Constitution, in pertinent, part reads:

> "No person shall be ..............deprived of life, liberty, or property, without due process of law."

After Rubio reported Sgt. Powell's actions, her right to participate in CTF's internal programs was immediately terminated; and she was transferred to the Rappahannock Regional Jail, in Stafford, Virginia. It is a more restrictive correctional institution than CTF. Rubio's transfer was not related to any disciplinary problems at CTF, but in retaliation against her for disclosing the illicit sexual actions of Sgt. Powell, with her.

29. When she arrived at the Rappahannock Regional Jail, she was placed in lock down. The lock down was not as a result of any disciplinary violations. Rubio continues to be on lock down and will remain in that status until released on September 20, 2009.

30. The Rappahannock Regional Jail is, on a good day, without traffic, an hour drive, from CTF, with traffic it is more. Their legal visits are restricted to 8am-8pm, Monday through Saturday and, only certain hours during those times. There are no legal visits on Sundays; whereas, at CTF, any attorney may visit Rubio at anytime.

31. As a further and direct result of the Sgt. Powell's acts, done while enforcing the enforcement District's rule(s), regulation(s) statute(s), ordinance(s), practice(s) and/or customs, governing CTF staffers, and; done while enforcing, executing, and carrying out the laws of the District of Columbia and the United States; Rubio's substantive due process rights, procedural process rights, Fifth and Eighth Amendment's rights were violated, she was deprived of life, liberty and property, without due process of law, she suffered emotional distress and she was transferred in retaliation against her for disclosing the illicit sexual actions of Sgt. Powell, with her.

**Wherefore, the premises considered,** Rubio demands $10 million dollars in compensatory damages and $10 million dollar, in punitive damages, against the

Defendant.

### Jury Demand

32. Rubio demands a trial by jury.

Respectfully submitted,

*/s/ Wendell C. Robinson*
Wendell C. Robinson, 377091
4308 Georgia Avenue, N.W.
Washington, D.C. 20011
202-223-4470